*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NORTHLAND RADIOLOGY, INC,

      Plaintiff-Appellee,

and

INFINITY PHYSICAL THERAPHY, LLC,

      Intervening Plaintiff-Appellee,

v

USAA CASUALTY INSURANCE COMPANY,

      Defendant-Appellant,

and

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

      Defendant-Appellee.

UNPUBLISHED
July 2, 2024

No. 362198
Wayne Circuit Court
LC No. 21-002307-NF

Before: BOONSTRA, P.J., and BORRELLO and FEENEY, JJ.

PER CURIAM.

Defendant USAA Casualty Insurance Company ("USAA") appeals by leave granted from the trial court's order denying summary disposition in USAA's favor as to plaintiffs. We affirm.

Plaintiff Northland Radiology, Inc. (Northland) initiated this lawsuit, in which plaintiff Infinity Physical Therapy, LLC (Infinity) intervened, after defendant, USAA Casualty Insurance Company (USAA), refused to pay no-fault personal protection insurance (PIP) benefits for accident-related injuries sustained by Shay Lewis, a Michigan resident who was an occupant of a motor vehicle involved in an accident while she was vacationing in Florida. USAA moved for summary disposition on the basis that it was not in the order of priority to pay Lewis's PIP benefits

under MCL 500.3114 of the no-fault act,[1] as amended by 2019 PA 21, effective June 11, 2019, which the trial court denied in an order entered June 30, 2022. USAA appeals the trial court's order by leave granted.[2]

The underlying facts in this case are not disputed. On March 1, 2020, Michigan residents, Nia King and Shay Lewis, were vacationing in Florida when they were involved in an automobile accident. According to the responding officer's report, King, who was driving a rental vehicle owned by Hertz, stopped suddenly in traffic, when the driver traveling behind her failed to recognize that traffic had stopped and rear-ended King. Lewis was a passenger in King's vehicle and was transported from the scene to a medical facility. Lewis sustained injuries in the accident for which she received medical treatment from Northland and Infinity.

King was listed as an operator on a no-fault insurance policy issued by USAA to her father, Christopher London, the named insured. King resided with London. According to USAA, King did not obtain separate insurance coverage on the Hertz rental vehicle.

Lewis did not have her own no-fault insurance policy on the date of the accident, nor did she reside with a family member who had a no-fault policy. Lewis is not related to King and has never resided with her. Lewis was not married on March 1, 2020.

Northland, as Lewis's assignee, sought payment of Lewis's PIP benefits from USAA by virtue of London's policy and the no-fault act. The policy, in relevant part, provided PIP benefits for accident-related injuries to an occupant of a vehicle operated by the named insured (London) or a family member (King) as set forth in the no-fault act.

This case presents two separate questions. First, whether PIP benefits are available through defendant Michigan Automobile Insurance Placement Facility (MAIPF). And, second, if not, whether USAA is obligated to pay PIP benefits. As to the first question, we conclude that PIP benefits are not available through MAIPF inasmuch as the motor vehicle accident occurred outside the state of Michigan. As for USAA's liability, we conclude that, while USAA would not be liable under the requirements of the no-fault act itself, the USAA policy provides broader coverage than that required by the statute and, under the clear and unambiguous terms of the insurance policy, USAA is obligated to pay PIP benefits arising from the injury of Shay Lewis.

The parties filed supplemental briefs in response to our order regarding updated briefing by the parties in light of this Court's decision in *Steanhouse v Michigan Auto Ins Placement Facility (On Remand)*, ___ Mich App ___; ___ NW2d ____ (2024).[3] USAA argues that *Steanhouse* did not change the fact that USAA is not in the order of priority for the payment of PIP benefits. Secondarily, it argues that *Steanhouse* was incorrectly decided. Plaintiff reiterates

---

[1] MCL 500.3101 *et seq.*

[2] *Northland Radiology, Inc v USAA Cas Ins Co*, unpublished order of the Court of Appeals, entered December 1, 2022 (Docket No. 362198).

[3] *Northland Radiology Inc v USAA Casualty Ins Co*, unpublished order of the Court of Appeals, issued May 2, 2024 (Docket No. 362198).

its position that the USAA policy language provides more expansive coverage than that required by the no-fault act and, under that policy language, USAA is obligated to pay PIP benefits in this case. And the MAIPF brief argues that *Steanhouse* was correctly decided and accordingly PIP benefits are not available through Michigan Assigned Claims Plan (MACP).

As to the first question, we agree with MAIPF that *Steanhouse* was correctly decided. And, accordingly, PIP benefits are not available through the MACP. Therefore, if any PIP benefits are available, those benefits must be paid under the USAA policy. Accordingly, a more thorough consideration of the second question is necessary.

There are two possible sources for USAA's liability for the payment of PIP benefits. The first is the no-fault act itself and second, as plaintiff argues, is that the policy language itself provides for greater benefits than that required by the no-fault act. We review both the summary disposition decision and issues of statutory construction de novo:

> This Court reviews de novo a trial court's decision on a motion for summary disposition. When reviewing a motion for summary disposition under MCR 2.116(C)(10), this Court may only consider, in the light most favorable to the party opposing the motion, the affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties. Under MCR 2.116(C)(10), summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party. This Court is liberal in finding genuine issues of material fact.
>
> Additionally, issues of statutory construction are questions of law, which this Court reviews de novo. Likewise, this Court reviews de novo, as a question of law, the construction and interpretation of an insurance contract. [*Lewis v Farmers Ins Exch*, 315 Mich App 202, 208-209; 888 NW2d 916 (2016) (quotation marks, citations, and alterations omitted).]

The no-fault act was substantially amended by 2019 PA 21, effective Jun 11, 2019. Because the accident giving rise to this case occurred after the effective date of the amendment, it is the version under the 2019 amendment that controls here. Under MCL 500.3111, as amended by 2019 PA 21, provides as follows:

> Personal protection insurance benefits are payable for accidental bodily injury suffered in an accident occurring out of this state, if the accident occurs within the United States, its territories and possessions, or Canada, and the person whose injury is the basis of the claim was at the time of the accident a named insured under a personal protection insurance policy, the spouse of a named insured, a relative of either domiciled in the same household, or an occupant of a vehicle involved in the accident, if the occupant was a resident of this state or if the owner or registrant of the vehicle was insured under a personal protection insurance

policy or provided security approved by the secretary of state under section 3101(5).

Under the clear language of the statute, PIP benefits are payable for accident-related injuries sustained in an out-of-state accident if the injured party is (1) a named insured under a PIP policy, (2) the spouse of a named insured, (3) a relative of either domiciled in the same household, or (4) an occupant of a vehicle involved in the accident, if the occupant was a Michigan resident or if the owner or registrant of the vehicle was insured under a PIP policy. Thus, Lewis, a Michigan resident who was involved in an automobile accident in Florida while occupying a vehicle, met the statutory criteria under MCL 500.3111, as amended, to qualify for PIP benefits.[4]

While MCL 500.3111 answers the question whether Lewis is entitled to PIP benefits, it does not answer the question of who is responsible for the payment of those benefits. To determine whether USAA was liable for Lewis's PIP benefits under the no-fault act, this Court must look to MCL 500.3114, which establishes the priority of insurers. Under MCL 500.3114(1), as amended by 2019 PA 21, a PIP policy "applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident." Lewis does not meet any of these criteria. Thus, under MCL 500.3114(4), as "a person who suffer[ed] accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle who [wa]s not covered under a [PIP] policy as provided in subsection (1)," Lewis "shall" claim PIP benefits through the MACP. See *Fradco Inc v Dep't of Treasury*, 495 Mich 104, 114; 895 NW2d 81 (2014) (the "use of the word 'shall' . . . indicates a mandatory and imperative directive"). Thus, there was no question that USAA was not liable for Lewis's PIP benefits under MCL 500.3114(1), as amended by 2019 PA 21.

This brings us back to the question whether PIP benefits are available to Lewis through the MACP. But, as discussed above, that question is answered by *Steanhouse*. *Steanhouse* addressed the issues of PIP benefits being available under MCL 500.3111, there not being a no-fault carrier in the order of priority, and the MACP not covering accidents occurring outside the state of Michigan. And *Steanhouse*, slip op at 9, definitively concluded that PIP benefits are not available through the MACP where the "injuries arose from an out-of-state accident . . . ." In short, while the no-fault act provides that Lewis is entitled to PIP benefits, it does not impose responsibility for the payment of those benefits upon any carrier.

---

[4] It should be noted that it is questionable whether Lewis would have been entitled to PIP benefits under the pre-2019 version of the statute. The pre-amendment version of MCL 500.3111 provided for PIP benefits for an out-of-state accident if "the person whose injury is the basis of the claim was at the time of the accident a named insured under a personal protection insurance policy, his spouse, a relative of either domiciled in the same household or an occupant of a vehicle involved in the accident whose owner or registrant was insured under a personal protection insurance policy or has provided security approved by the secretary of state under subsection (4) of section 3101." The only category that potentially would apply is if the rental-car company that owned the vehicle maintained the described coverage.

This leads us to the second potential source of the payment of PIP benefits, whether the USAA policy itself provides coverage. On this point, we agree with plaintiff that it does. That question is controlled by our decision in *Mapp v Progressive Ins Co*, ___ Mich App ___; ___NW3d ___ (2023) (Docket Nos. 359889, 360828), lv den ___ Mich ___ (2024). *Mapp* did involve a different question: whether PIP benefits are available to a claimant residing in a named insured's household where the policy used the term "residing" rather than the more restrictive term used in the no-fault act of "domiciled." *Id.*, slip op at 5-6. This Court concluded "that a no-fault insurance policy may by its terms provide broader coverage than that required by the no-fault act even with respect to mandated coverages. In this case, the policy language provides for a broader category of eligible recipients of PIP benefits beyond the statutor[y] requirement of coverage for those relatives domiciled in a named insured's household." *Id.*, slip op at 15.

This principle was also recognized by the Supreme Court's decision in *Andary v USAA Casualty Ins Co*, 512 Mich 207, 232-233; 1 NW3d 186 (2023), where the Court stated that the plaintiffs'

> rights to PIP benefits were both contractual and statutory in nature. We reject the arguments put forward by defendants and the Court of Appeals dissent that PIP benefits are wholly statutory. It is initially worth observing that there was a market in Michigan for voluntary private automobile insurance long before the first iteration of Michigan's no-fault act and its mandate to carry insurance coverage as a condition of operating a vehicle. . . . . With the enactment of 1972 PA 294, the Michigan Legislature changed the landscape by mandating that people operating motor vehicles in Michigan purchase a policy of insurance from a private vendor and *mandating a floor for* certain forms of coverage and benefits, including *PIP benefits*. [Emphasis added.]

The Court, 512 Mich at 238, emphasized this point later in its opinion:

> A person injured in an automobile accident can bring a direct, private cause of action against an insurer to enforce the terms of an applicable no-fault policy of insurance so long as the terms do not provide for less than what the statutory scheme mandates.
>
> We conclude that PIP benefits mandated by the no-fault act are both statutory and contractual in nature in cases in which the injured person is provided PIP benefits as a covered individual under the terms of a no-fault insurance policy. [Emphasis omitted.]

Therefore, we must look to the applicable policy language in this case. The relevant portion of the USAA policy provides as follows:

> A.      PIP Coverage.
>
>      1.      We will pay the following benefits to or for a covered person who sustains BI [bodily injury] accidentally caused by a motor vehicle accident as set forth in Chapter 31 of the Michigan Insurance Code:

a.     Medical expenses;

b.     Funeral expenses;

c.     Work loss;

d.     Replacement services; and

e.     Survivor's loss.

In turn, Part B of the policy defines "covered person" as follows:

A.     "Covered person" as used in this Part means:

1.     You or your family member.

2.     Any other person:

a.     While occupying your covered auto;

b.     While occupying a motor vehicle other than your covered auto, which is operated by you or any family member and to which Part A – Liability of this policy applies; or

c.     While not occupying any motor vehicle if the accident involves your covered auto.

Thus, PIP benefits are paid to a "covered person" as defined by the policy. And the policy's definition includes any "other person" who is "occupying a motor vehicle other than your covered auto, which is operated by you or any family member and to which Part A . . . applies . . . ." In this case, Shay Lewis is "any other person" and she was "occupying a motor vehicle other than your covered auto, which is operated by [insured's] family member" at the time of the accident.

In its original brief on appeal, USAA endeavors to avoid coverage on this basis by arguing that this policy language cannot provide coverage to Lewis because she is an incidental third-party beneficiary and is not an intended third-party beneficiary. We disagree. Michigan's third-party beneficiary statute, MCL 600.1405, provides in pertinent part as follows:

Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

(1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something directly to or for said person.

The Supreme Court in *Schmalfeldt v North Pointe Ins Co*, 469 Mich 422; 670 NW2d 651 (2003), interpreted this statute in the context of a commercial liability insurance policy where a patron injured in a bar fight claimed benefits for medical payments under the policy. The defendant

refused absent a request from the insured to do so and the insured declined to invoke the medical benefits provision of the insurance policy. *Id*. at 424. In addition to looking to the language of the statute, the Court looked to the policy language, *id.* at 426-427, referring to the relevant portion of the policy regarding medical payments:

COVERAGE C. MEDICAL PAYMENTS

1. Insuring Agreement.

a. We will pay medical expenses as described below for bodily injury caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the coverage territory and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. . . .

The Court concluded that Schmalfeldt was at most an incidental beneficiary:

We affirm the decision of the Court of Appeals because the contract contains no promise to directly benefit Schmalfeldt within the meaning of 1405. Nothing in the insurance policy specifically designates Schmalfeldt, *or the class of business patrons of the insured of which he was one,* as an intended third-party beneficiary of the medical benefits provision. At best, the policy recognizes the possibility of some incidental benefit to members of the public at large, but such a class is too broad to qualify for third-party status under the statute. *Id*. at 429. [Emphasis added.]

Notably, this Court's decision in the case concluded that "the purpose of the provision in the instant case is essentially to shield the insured from having eventually to pay out-of-pocket expenses." *Schmalfeldt v North Pointe Ins Co*, 252 Mich 556, 564; 652 NW2d 683 (2002).

We do not see how a liability coverage provision in a commercial policy can translate to PIP coverage in a no-fault automobile policy. In *Schmalfeldt*, the purpose of the policy was to

provide coverage to the insured in the event of a liability claim lodged by a third-party for injuries suffered on the insured's premises. In our case, on the other hand, PIP benefits are not based upon the insured's liability for an injury; they are benefits provided to an occupant of a motor vehicle who is injured in an accident. More importantly, *Schmalfeldt* recognizes that intended beneficiaries may include a class of individuals. In this case, the class of individuals covered by USAA's policy are occupants of an insured vehicle. To put it more succinctly, if the purpose of the "other occupants" clause in the insurance policy is not to provide those "other occupants" with PIP benefits, then it serves no purpose at all. In order to give meaning to that clause of the insurance policy, it must be construed to mean that "other occupants," of which Lewis was one, are provided with PIP benefits (at least to the extent that there is not a carrier of higher priority, for which there is not one in this case).

USAA also looks to the Supreme Court's decision in *Harris v Auto Club In Ass'n*, 494 Mich 462; 835 NW2d 356 (2013), but its reliance on that case is misplaced. *Harris* involved a claim by the plaintiff who was injured while riding a motorcycle and was struck by a motor vehicle. Any PIP benefits to which the plaintiff was entitled would come from the motor vehicle's no-fault insurer. *Id.* at 465. The plaintiff was insured under a medical insurance policy and was seeking recovery from both the no-fault policy and the medical policy. That is, he was seeking to have the medical policy pay his medical bills and for the no-fault carrier to simply send him a check in the same amount. *Id*. at 466. The case essentially involved a determination regarding the effect of the health insurance policy's coordination of benefits clause and whether the plaintiff was entitled to a double recovery.[5]

In the case before us, USAA is arguing that *Harris* stands for the proposition that where a claimant is not a named insured, spouse or resident relative, they are not claiming benefits under the policy and thus the policy is irrelevant. *Harris* does not stand for that proposition. Indeed, *Harris* specifically points out that there was "no allegation in this case that the no-fault insurance policy contained any promise to benefit Harris." *Id*. at 471 n 28. That is, any claim to no-fault benefits was by virtue of the no-fault statute, not the provisions of the policy itself. Again, it must be emphasized that the plaintiff in *Harris* was not an occupant of the insured vehicle, but was the person hit by the insured vehicle. And it is also important to note that the Court emphasized that "an insured must pay a premium to obtain insurance policies that provide for double recovery" under both a no-fault policy and a health insurance policy. *Id*. at 472. *Harris* is simply not on point with the case before us.[6]

USAA also poses the argument that the coverage provision in its policy was there because, pre-amendment, it was required to be there. Perhaps so, but the more relevant point in our view is

---

[5] As noted by the Court, where an insured has an uncoordinated no-fault policy, under certain circumstances the insured may be able to obtain a double recovery under both the no-fault policy and the health insurance policy. *Id.* at 470.

[6] Additionally, the plaintiff in *Harris*— the unfortunate person on the roadway struck by the insured vehicle— looks more like the "public at large" referred to in *Schmalfeldt* while Lewis, as an occupant of a vehicle being driven by an insured, is more consistent with an identifiable class of individuals.

that it remained in the policy post-amendment. But 2019 PA 21 was passed by the Legislature on May 24, 2019, approved by the Governor on May 30, and was filed with the Secretary of State with immediate effect on June 12. The accident in this case occurred nearly nine months later, on March 1, 2020. The policy itself could have been modified, but was not. Moreover, while USAA looks to the policy's reference to Chapter 31 of the Insurance Code as somehow reflecting its intent to limit its liability to the minimum coverage required by the no-fault act, this is a strained reading of the policy. Had this been USAA's intent, that intent would have been better expressed by a clear statement that the policy does not provide any benefit other than those required by the no-fault act.

For these reasons, we conclude that PIP coverage is provided in this case under the contractual provisions of the policy. Accordingly, the trial court did not err in denying USAA summary disposition.

Affirmed. Appellees may tax costs.

/s/ Mark T. Boonstra
/s/ Stephen L. Borrello
/s/ Kathleen A. Feeney